ORION PORTFOLIO SERVICES 2, LLC, APPELLANT, *v.* COUNTY OF CLARK EX REL. UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA, RESPONDENT.

No. 53969

October 14, 2010                                    245 P.3d 527

*Bailey Kennedy* and *Dennis L. Kennedy, Sarah E. Harmon*, and *Joseph A. Liebman*, Las Vegas, for Appellant.

*Olson, Cannon, Gormley & Desruisseaux* and *Thomas D. Dillard, Jr., Walter Cannon*, and *Joseph M. Ortuno*, Las Vegas, for Respondent.

---

## OPINION

By the Court, DOUGLAS, J.:

The United States District Court for the District of Nevada has certified two questions to this court, pursuant to NRAP 5. Although we accept the federal court's certified questions, we reframe them to better reflect the factual circumstances of the federal case and, accordingly, answer the following questions. When a local government entity sells property using the competitive bidding process, does NRS 332.185 require the government to follow public bidding rules outlined in Chapter 332? And, under Nevada law, is a contract obtained through competitive bidding void when it materially differs from the contents of the invitation to bid?

We conclude that the answer to both questions is yes. If a public entity chooses to sell property by competitive bidding, it must follow the rules set forth in NRS Chapter 332. And a contract obtained through competitive bidding is void if it materially differs from the contents of the invitation to bid.

### PROCEDURAL HISTORY AND FACTS

Respondent County of Clark ex rel. University Medical Center of Southern Nevada (UMC) decided to sell certain consumer health care accounts through competitive bidding by extending an invitation to bid, which was published in a newspaper.[1] The invitation included a provision that if UMC determined not to sell an ac-

---

[1]The Clark County Commission sits as the governing board for UMC. Because UMC is a local government entity, it must conform to NRS Chapter 332, which concerns purchases and sales by a local government. UMC was selling the right to collect debts on accounts on which UMC had been unable to collect.

count that it initially intended to sell, UMC could substitute that account with an account of equal value. Thereafter, UMC issued an addendum to its bid invitation providing that no accounts would be replaced.

Ultimately, UMC accepted appellant Orion Portfolio Services 2's bid, which Orion made contingent on the parties entering into a purchase agreement for the accounts. The parties subsequently entered into a purchase agreement, which included a provision that allowed the parties to replace certain accounts, notwithstanding UMC's invitation-to-bid addendum providing that no accounts would be substituted.

After the parties finalized the contract, Orion asked UMC to substitute a number of accounts under the provision in the parties' agreement purportedly allowing it to do so. When UMC refused to substitute the accounts, Orion instituted a breach of contract action against UMC in the United States District Court.

UMC eventually moved for summary judgment, arguing that the parties' contract is void because it materially differs from the invitation to bid. Orion opposed the motion and filed a countermotion for summary judgment. In addition to arguing that Nevada law does not void a contract that materially differs from the invitation to bid on which it is based, Orion also argued that Nevada's statute concerning a government entity's sale of personal property, NRS 332.185, does not require a government entity to sell personal property using competitive bidding, but rather, gives the government entity discretion to dispose of the personal property "by any manner." Thus, Orion argued, the requirements of competitive bidding found in NRS Chapter 332 do not apply to UMC's sale of personal property that is no longer required for public use. Because the parties' arguments raise questions of Nevada law that have never been addressed by this court, the United States District Court certified two questions, which we have reframed to better reflect the factual situation presented in this case.

## DISCUSSION

### NRAP 5

This court may answer questions of law certified by a federal court when the "answers may 'be determinative' of part of the federal case, there is no controlling [Nevada] precedent, and the answer will help settle important questions of law." *Volvo Cars of North America v. Ricci*, 122 Nev. 746, 751, 137 P.3d 1161, 1164 (2006) (quoting *Ventura Group v. Ventura Port Dist.*, 16 P.3d 717, 719 (Cal. 2001)); NRAP 5.

In this case, the federal district court certified two questions regarding the interpretation of NRS 332.185.[2] The questions asked by the federal district court used the term "public auction"; however, the record in this case indicates that UMC advertised an invitation to bid and acted pursuant to the competitive bidding statutes. Because the instant case involved competitive bidding and not a public auction, we have reframed the federal court's questions to better reflect the factual circumstances and procedural posture of the case before us. The federal district court also asked, in part, whether a local government entity must follow the public bidding rules set forth in NRS Chapter 333. However, because Chapter 333 concerns the state's purchasing and selling of property and this case involves the sale of property by a local government, we also limit the questions to whether the government must follow the public bidding rules outlined in NRS Chapter 332, which relates to purchasing and selling by local governments. "In so doing, we point out that, in exercising our discretion to answer certified questions, we nevertheless must constrain ourselves to resolving legal issues presented in the parties' pleadings." *Terracon Consultants v. Mandalay Resort*, 125 Nev. 66, 72, 206 P.3d 81, 85 (2009). After restating the questions, we conclude that the three criteria articulated in *Volvo Cars* are met. The answers to these two questions will be determinative of the federal case, there is no controlling Nevada precedent, and the answers will help settle important questions of law. Therefore, we answer the certified questions.

We first address whether NRS 332.185 requires the government to strictly adhere to the competitive bidding rules outlined in NRS Chapter 332. We then consider whether a contract obtained through competitive bidding is void if it materially differs from the invitation to bid.

*Whether NRS 332.185 requires local governments to dispose of personal property through the competitive bidding process*

The first certified question requires this court to determine whether NRS 332.185 requires local governments to use the competitive bidding process outlined in NRS Chapter 332 when dis-

---

[2]Specifically, the federal district court certified the following questions: "When a local government entity sells property at a public auction, does [NRS 332.185] require the government to follow public bidding rules outlined in sections 332 and 333? Under Nevada law, is a contract obtained through a public auction void when it materially differs from the contents of the invitation to bid?"

posing of personal property. Or, under NRS 332.185, may a local government dispose of its property in any manner? To answer this question, we must interpret NRS 332.185's language and determine which manner of disposal is permissible under the circumstances of this case. We conclude that a local government may dispose of its personal property in any manner it chooses, but if it chooses to use the competitive bidding process, it must follow the mandates of NRS Chapter 332 as nearly as possible.

### NRS 332.185(1)'s statutory interpretation

NRS Chapter 332 governs purchases made by local governments and requires that the purchases be completed through a competitive bidding process. *See generally* NRS 332.039. The disposal of government property, however, is governed by NRS 332.185, titled in part "[s]ale of personal property of public entity." NRS 332.185(1) states:

> Except as otherwise provided in subsection 2 and NRS 244.1505 and 334.070, all sales of personal property of the local government must be made, as nearly as possible, under the same conditions and limitations as required by this chapter in the purchase of personal property. The governing body or its authorized representative may dispose of personal property of the local government by any manner, including, without limitation, at public auction, if the governing body or its authorized representative determines that the property is no longer required for public use and deems such action desirable and in the best interests of the local government.

The construction of a statute is a question of law, which we review de novo. *State, Dep't of Mtr. Vehicles v. Lovett,* 110 Nev. 473, 476, 874 P.2d 1247, 1249 (1994). When a statute is clear and unambiguous, this court gives effect to the plain and ordinary meaning of the words and does not resort to the rules of construction. *Seput v. Lacayo,* 122 Nev. 499, 502, 134 P.3d 733, 735 (2006), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas,* 124 Nev. 224, 228 n.6, 181 P.3d 670, 672 n.6 (2008). Where a statute's language is ambiguous, however, the court must look to legislative history and rules of statutory interpretation to determine its meaning. *Leven v. Frey,* 123 Nev. 399, 404, 168 P.3d 712, 716 (2007). A statute's language is ambiguous when it is capable of more than one reasonable interpretation. *Id.* Internal conflict can also render a statute ambiguous. *Law Offices of Barry Levinson v. Milko,* 124 Nev. 355, 367, 184 P.3d 378, 387 (2008).

The Legislature's intent is the primary consideration when interpreting an ambiguous statute. *Cleghorn v. Hess*, 109 Nev. 544, 548, 853 P.2d 1260, 1262 (1993). When construing an ambiguous statutory provision, "this court determines the meaning of the words used in a statute by examining the context and the spirit of the law or the causes which induced the legislature to enact it." *Leven*, 123 Nev. at 405, 168 P.3d at 716 (internal quotation omitted). In conducting this analysis, "[t]he entire subject matter and policy may be involved as an interpretive aid." *Id.* (internal quotation marks omitted). Accordingly, this court will consider "the statute's multiple legislative provisions as a whole." *Id.*

This court has a duty to construe statutes as a whole, so that all provisions are considered together and, to the extent practicable, reconciled and harmonized. *Id.*; *Southern Nev. Homebuilders v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005). In addition, the court will not render any part of the statute meaningless, and will not read the statute's language so as to produce absurd or unreasonable results. *Leven*, 123 Nev. at 405, 168 P.3d at 716.

Orion argues that the statute's plain language allows a local government to dispose of its personal property "by any manner." UMC argues that the plain language of NRS 332.185 demands adherence to competitive bidding requirements for the sale of personal property. UMC focuses on the mandatory language contained in the first sentence of the statute, which provides that *"all sales of personal property of the local government must be made,* as nearly as possible, under the same conditions and limitations as required by this chapter in the purchase of personal property." NRS 332.185(1) (emphases added).

Both parties contend that NRS 332.185(1) can be interpreted according to its plain language. UMC and Orion assert that the statute's first sentence mandates competitive bidding and the second sentence provides an exception to using the competitive bidding process; they disagree as to which sentence controls in this situation. UMC and Orion's interpretation of the statute is reasonable. Because the statute's language is capable of more than one reasonable interpretation, we conclude that NRS 332.185(1) is ambiguous.

However, in considering the statute's plain language, we conclude that the statute's second sentence cannot be read as an exception to the first sentence. To do so would render the first sentence meaningless. Thus, the internal conflict also renders

NRS 332.185(1) ambiguous. Because the statute is ambiguous, we must look to the legislative history and harmonize the two provisions to give all the words meaning.

### Legislative history

Since NRS 332.185 was adopted, it allowed personal property to be sold at a public auction if the local government determined that such a sale was desirable and in the government's best interest.[3] 1975 Nev. Stat., ch. 732, § 22, at 1539. In 1999, the statute was amended to require that the government "determine[ ] that the property is no longer required for public use" if the property was going to be disposed of at public auction. 1999 Nev. Stat., ch. 374, § 8, at 1685-86; 1999 Nev. Stat., ch. 606, § 54, at 3322. At the 1999 legislative hearings, a purchasing manager for Clark County, Nevada, representing the Nevada Public Purchasing Commission, testified that the amendment gave the local governments some flexibility in disposing of property. *See* Hearing on S.B. 341 Before the Assembly Comm. on Government Affairs, 70th Leg. (Nev., April 15, 1999). Then in 2001, Assembly Bill 649 further expanded the local government's discretion in the sale of government property. 2001 Nev. Stat., ch. 288, § 13, at 1319. This was the latest amendment to the statute and composes the current version of NRS 332.185(1).

With the amendments to NRS 332.185, the Legislature appears to have given local government more options for disposing of personal property, but it also retained the first sentence, which requires adherence to the rules of competitive bidding "as nearly as possible" and the limitation as to what property could be disposed of. Thus, the Legislature's intent with respect to these two provisions is not entirely clear. As the legislative history provides little guidance on the issue, we must attempt to read the two sentences together in an effort to harmonize them and not render any part superfluous.

Harmonizing the two sentences together requires us to conclude that the local government has the discretion to dispose of personal property in any manner; however, when the local government chooses to sell through competitive bidding, it must follow the rules of competitive bidding, as set forth in NRS Chapter 332, "as nearly as possible."

### Whether strict compliance with the bidding requirements is required when NRS 332.185(1) allows for compliance "as nearly as possible"

The first sentence of NRS 332.185(1) states that "all sales of personal property of the local government must be made, as nearly

---

[3]This language was added to former NRS 332.190 in 1969. 1969 Nev. Stat., ch. 435, § 14, at 754.

as possible, under the same conditions and limitations as required by [NRS Chapter 332] in the purchase of personal property." However, neither party offers an interpretation of the phrase "as nearly as possible." The interpretation of the phrase is key to determining whether a local government is required to strictly comply with the competitive bidding requirements of Chapter 332 when it chooses to sell property through competitive bidding.

We conclude that the phrase should be given its plain meaning. "[N]early" is defined as "all but; almost . . . with close approximation," and "possible" is defined as "that may or can be, exist, happen, [or] be done." *Webster's New Universal Unabridged Dictionary* 1283, 1509 (1996). Using the dictionary definitions of the key words within it, the phrase "as nearly as possible" means "with as close an approximation as can be done." We conclude the phrase was inserted to allow for the differences between purchases and sales. For example, NRS 332.065 requires the award of the contract to the lowest responsive and responsible bidder, but for a sale, it would be to the highest responsive and responsible bidder.

Orion argues that even though UMC can choose to sell in any manner, including competitive bidding, pursuant to the second sentence of NRS 332.185(1), it did not have to follow the stringent requirements of competitive bidding. Orion analogizes to this court's statement in a footnote in *Harmon v. Tanner Motor Tours*, 79 Nev. 4, 12 n.2, 377 P.2d 622, 626 n.2 (1963). In that case, the court held that the government entity (Las Vegas airport) could choose to use some form of public bidding process as a matter of convenience without regard to the stringent statutory competitive bidding requirements. *Id.*

*Harmon* is, however, distinguishable from the case before us. The statute interpreted in that case, NRS 496.090, specifically pertains to municipal airports. *Harmon*, 79 Nev. at 12 n.2, 377 P.2d at 626 n.2. Unlike NRS Chapter 496, NRS Chapter 332 deals extensively with competitive bidding. We conclude that UMC could have chosen to sell in any manner, including competitive bidding, pursuant to the second sentence of NRS 332.185(1). However, once UMC chose to sell through competitive bidding, it had to follow the rules of competitive bidding, as set forth in NRS Chapter 332 for the purchase of personal property, as nearly as possible.

*Whether a contract obtained through competitive bidding is void if it materially differs from the invitation to bid*

The second certified question asks this court to determine whether a contract obtained through competitive bidding is void when it materially differs from the contents of the invitation to bid.[4] UMC asserts that a local government has no discretion in

---

[4]Both parties present arguments about whether the contract between Orion and UMC materially differed from the contents of the invitation to bid. This

awarding a contract if the bid varies materially from the invitation requirements and that a contract that materially differs from the invitation to bid is void. Orion contends that the terms of the advertisement and the terms of the bid or contract do not need to be identical.

While Nevada has never directly addressed whether a contract obtained through competitive bidding is void when it materially differs from the contents of the invitation to bid, in *Faust v. Donrey Media Group*, 95 Nev. 235, 237, 591 P.2d 1152, 1154 (1979), this court addressed a similar question when it held that "[a]n awarding board has a duty to reject any bid materially varying from bid specifications." In explaining its decision, the court stated that "[t]he rationale of this rule is to preserve the competitive nature of bidding by preventing unfair advantage to any bidder, or other conditions undermining the necessary common standard of competition." *Id.* at 238 n.1, 591 P.2d at 1154 n.1. This court has also held that "[t]he purpose of bidding is to 'save public funds' and guard against 'favoritism, improvidence and corruption.'" *Richardson Constr. v. Clark Cty. Sch. Dist.*, 123 Nev. 61, 66, 156 P.3d 21, 24 (2007) (quoting *Gulf Oil Corp. v. Clark County*, 94 Nev. 116, 118, 575 P.2d 1332, 1333 (1978)). Other jurisdictions have taken the *Faust* rule a step further and determined that the resulting contract must also be in substantial accordance with the terms of the advertisement for bids. *See Pascoe v. Barlum*, 225 N.W. 506, 507 (Mich. 1929) (holding "that the bid must conform to the specifications, and the contract to both," but to "destroy the competitive character of the bid . . . , the variation must be substantial" (citing *Andrews v. City of Detroit*, 206 N.W. 514 (Mich. 1925))); *National Engineering & Cont. Co. v. City of Cleveland*, 146 N.E.2d 340, 345 (Ohio Ct. Com. Pl. 1957) (citing *Pascoe*, 225 N.W. 506, and *Andrews*, 206 N.W. 514); *Wantland v. Anderson*, 203 S.W.2d 787, 790 (Tex. Civ. App. 1947) (holding that "a variation between the contract as advertised and the one actually entered into . . . must be substantial [in order to] render such contract void and illegal" (citing *Pascoe*, 225 N.W. 506)); *Platt Elec. Sup., Inc. v. City of Seattle, Div. of Pur.*, 555 P.2d 421, 430 (Wash. Ct. App. 1976) ("A public contract awarded pursuant to competitive bidding procedures must be substantially in accordance with the terms of the invitation to bid."); 64 Am. Jur. 2d *Public Works and Contracts* § 65 (2001 & Supp. 2010).

---

is a question of fact and is irrelevant to the questions of law presented to this court. We have properly left this factual determination to the federal court, which can address these issues after this court answers the certified questions presented.

We conclude that a contract is void if it materially differs from the contents of the invitation to bid. The court's reasoning in *Faust*, and the cases the court relied upon in *Faust*, indicate that this court has already moved in this direction. *See also Inge v. Board of Public Works*, 33 So. 678, 682 (Ala. 1903) (''The basis of the bidding and the contract entered into should be the same, for otherwise the very object and purpose of the law in calling for competitive bidding might be thwarted.''); *Hillside Twp. v. Sternin*, 136 A.2d 265, 268 (N.J. 1957) (''[A]ll bids must comply with the terms imposed, and any material departure therefrom invalidates a nonconforming bid as well as any contract based upon it.''); *Smith Tug & Barge Co. v. Columbia-Pacific Towing Corp.*, 443 P.2d 205, 218 (Or. 1968) (''We find that the variation was substantial and rendered the bid and the consequent lease invalid.'').

However, we note that it is well-established that the terms of the advertisement and the terms of the bid or contract do not need to be identical. *Bud Mahas Const. v. Clark County School Dist.*, 767 F. Supp. 1045, 1048 (D. Nev. 1991) (''[M]inor variations from the specifications are not a basis to reject the bid . . . .''). Only where a contract contains substantial variations from bidding specifications is the contract void. 64 Am. Jur. 2d *Public Works & Contracts* § 65 (2001 & Supp. 2010); 13 Eugene McQuillin, *The Law of Municipal Corporations* § 37:107 (3d ed. 2008). We agree that the terms of the advertisement and the terms of the bid or contract do not need to be identical. Nevertheless, the question of whether any variations between the invitation to bid and the contract in this case are material is a mixed question of law and fact not before this court, and we make no ruling regarding the facts of this case. *So. Foods Group v. State, Dept. of Educ.*, 974 P.2d 1033, 1042 (Haw. 1999).

If the invitation to bid and the contract differ materially, then the contract is void. It is void, not voidable, because the local government exceeded its authority and was not authorized to make such a contract. 13 McQuillin, *supra*, § 37:107; 10A McQuillin, *supra*, § 29.104.20 (3d ed. 2009). The Arizona Supreme Court has held that ''the County, in its contracts must act not only within the limits of the power granted it by the legislature, but must also comply with the statutory requirements prescribed by the legislature. Failure to do so precludes enforcement of the contract according to its terms.'' *Mohave County v. Mohave-Kingman Estates*, 586 P.2d 978, 981 (Ariz. 1978). We agree with Arizona's reasoning. The

408

local government must act within the limits of its power when forming contracts, and contracts whose terms materially differ from the terms of the invitation to bid exceed the local government's authority and are void.[5]

## CONCLUSION

We conclude that if a public entity chooses to sell property by competitive bidding, it must follow the rules set forth in NRS Chapter 332. Additionally, a contract obtained through competitive bidding is void if it materially differs from the contents of the invitation to bid. Accordingly, we answer the U.S. District Court's certified questions in the affirmative.

PARRAGUIRRE, C.J., and HARDESTY, CHERRY, SAITTA, GIBBONS, and PICKERING, JJ., concur.

---

[5]As UMC points out, not only must municipal contracts be formed with no material variations from the specifications, but it is the burden of the private entity to assure compliance. "The rule is firmly established that one who makes a contract with a municipal corporation or administrative agency is bound to take notice of the limitations of its powers to contract." *Hanna v. Board of Education of Wicomico County*, 87 A.2d 846, 850 (Md. 1952); *see* 13 McQuillin, *supra*, § 37:99 (3d ed. 2008).