An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

INSULATION CONTRACTING &
SUPPLY, INC., A NEVADA
CORPORATION,
Appellant/Cross-Respondent,
vs.
S3H, INC., A NEVADA CORPORATION,
Respondent/Cross-Appellant.

No. 62856

FILED

SEP 29 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

This is an appeal and cross-appeal from a district court judgment on a mechanic's lien. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

This case stems from a dispute between two subcontractors, S3H, Inc. ("S3H") and Insulation Contracting & Supply, Inc. ("ICS"), that worked on Veer Towers at City Center. S3H worked directly under the general contractor ("Tishman"). ICS worked directly under S3H, making S3H the higher-tiered subcontractor and ICS the lower-tiered subcontractor. ICS filed a complaint against S3H seeking to foreclose on a mechanic's lien and alleging breach of contract and unjust enrichment. ICS sought approximately $1,007,100 in damages. After a bench trial, the district court determined that ICS was entitled to $51,415.48 for its claims. In settling claims for attorney fees and costs, the district court concluded that ICS was entitled to $132,129.17 while S3H was entitled to $102,029.41, giving ICS a net total judgment of $87,401.75. ICS appealed the district court's decision and S3H filed a cross-appeal.

15-29520

We are asked to determine whether (1) ICS waived its claims against S3H, (2) NRS 624.626 entitles ICS to damages beyond the district court's award, (3) ICS proved damages beyond the district court's award, (4) the district court awarded ICS damages for costs that S3H already paid, (5) ICS's mechanic's lien and unjust enrichment claims fail as a matter of law, and (6) the district court erred in awarding either party attorney fees. We reverse in part and remand the issue of attorney fees because the district court did not adequately explain its bases for those awards. We affirm in all other respects.

*ICS Did Not Waive Its Claims Against S3H*

S3H contends ICS waived all material claims by signing an unconditional waiver and accepting payment for that waiver. The district court held ICS's unconditional waiver ineffective because S3H only tendered $440,546.64 to ICS, and the full amount agreed upon for ICS's waiver was $601,001. In light of the district court's findings, it properly declined to enforce that waiver.

First, S3H argues unconditional waivers are enforceable even without payment. NRS 108.2457(5)(d) sets forth a statutorily mandated form for unconditional waivers, and that form requires the following language: "[t]his document is enforceable against you if you sign it, even if you have not been paid. If you have not been paid, use a conditional release form." However, NRS 108.2457(2)(b) declares all lien waivers unenforceable unless "[t]he lien claimant receive[s] payment for the lien." Conflict between statutory provisions can make unambiguous language ambiguous. *Orion Portfolio Servs. 2, LLC v. Cnty. of Clark*, 126 Nev. 397, 402, 245 P.3d 527, 531 (2010). If such an ambiguity arises, the court must look to the Legislature's intent. *Id.* at 403, 245 P.3d 531. Additionally,

"this court considers the statute's multiple legislative provisions as a whole." *Leven v. Frey*, 123 Nev. 399, 405, 168 P.3d 712, 716 (2007).

NRS 108.2457(2)(b) governs here, so lien waivers cannot be enforced unless the waiving party is paid in full. The legislative history shows the statutory forms contained at NRS 108.2457(5)(d) were merely meant to standardize waiver forms, not alter any rights or obligations contained elsewhere in the statute. Conversely, NRS 108.2457(1) and (2) made important, substantive changes to Nevada law, such that waiving lien claims became substantially more difficult. *See In re Fontainebleau Las Vegas Holdings, LLC*, 128 Nev., Adv. Op. 53, 289 P.3d 1199, 1213-14 (2012); *Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102, 1115 n.39, 197 P.3d 1032, 1041 n.39 (2008). The conflicting provisions are easily resolved by reading NRS 108.2457(5)(d)'s disclosure as a warning about the worst possible outcome for a lien claimant, rather than a statement of law. This is a natural reading of the provisions, and it is consistent with NRS 108.2457's legislative history and structure.

S3H also contends that the district court erred in allowing evidence that undermined the unconditional waiver. We disagree. Nevada applies the parol evidence rule to waivers. *Tallman v. First Nat'l Bank of Nev.*, 66 Nev. 248, 257, 208 P.2d 302, 306 (1949). It also applies traditional exceptions to the parol evidence rule, like fraud and mistake. *Russ v. General Motors Corp.*, 111 Nev. 1431, 1438-39, 906 P.2d 718, 723 (1995). Here, the district court found that S3H made a mistake that led the parties to agree $601,001 would settle all claims, not $440,546.64 as listed on the unconditional waiver form. Therefore, the district court did not abuse its discretion in allowing extrinsic evidence of a mistake to contradict the terms of the unconditional waiver. *See M.C. Multi-Family*

*Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913, 193 P.3d 536, 544 (2008).

Finally, S3H argues that it paid in full for ICS's waiver by paying $440,546.64. The district court disagreed, as it concluded by necessary implication that S3H owed ICS $601,001 for its unconditional waiver.[1] The district court did not err. Settlement agreements require a meeting of the minds. *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). Whether a meeting of the minds occurred is a factual finding reviewed for substantial evidence. *Lawry v. Devine*, 82 Nev. 65, 67, 410 P.2d 761, 762 (1966). "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Whitemaine v. Aniskovich*, 124 Nev. 302, 308, 183 P.3d 137, 141 (2008).

Although evidence about the parties' settlement expectations is conflicting, substantial evidence supports the district court's conclusion that the parties agreed to a $601,001 settlement. S3H agrees that the parties initially believed the final payment to ICS would be $601,001. However, S3H characterizes the agreement as S3H paying (1) approved change orders, plus (2) withheld retention, plus (3) $229,440 for ICS's $1.2 million claim. S3H claims, and the district court found, that a math error led S3H to incorrectly believe the total amount was $601,001. Therefore,

---

[1]The district court found that the parties agreed to a payment of $601,001 to settle ICS's claims. However, ICS signed an unconditional waiver stating that S3H paid ICS $440,546.64 to waive all material claims. The district court necessarily found that S3H agreed to pay $601,001 because it found that "S3H did not comply with agreed terms of the settlement," even though it also concluded that S3H paid ICS $440,546.64.

S3H's position is entirely consistent with the proposition that, at one point, the parties reached a global settlement agreement for $601,001.

Documentary evidence also supports the district court's finding that the parties initially agreed to a total payment of $601,001. An email from an S3H employee shows the "[n]egotiated final payment for both jobs" is $601,001. The email further directed ICS to complete an additional payment application to make up the difference between the amount tendered and the agreed $601,001. This evidence is adequate for a reasonable mind to reach the conclusion that the parties had a meeting of the minds and that meeting required S3H to pay ICS $601,001 for the unconditional waiver.

*ICS Is Not Entitled to Additional Damages Under NRS 624.626*

ICS argues that S3H failed to adequately respond to ICS's change order requests pursuant to NRS 624.626. We disagree. NRS 624.626 requires higher-tiered contractors to reply to change order requests within 30 days by either (1) issuing the requested change order, or (2) "[i]f the request for a change order is unreasonable, giv[ing] written notice to the lower-tiered subcontractor of the reasons why the change order is unreasonable." NRS 624.626(1)(e)(2). If the higher-tiered contractor fails to do so, "[t]he agreement price must be increased by the amount sought in the request for a change order." NRS 624.626(3)(a).

S3H responded, in writing, to ICS's request for $1,236,540 within the allotted 30 days, as follows:

> [a]s you are aware, our obligation to approve a given [change order request] is contingent on our receipt of approval and payment for such from [Tishman]. As a result, until such time as [Tishman] performs a comprehensive review and responds to the propriety of the [change order

request], we must assume and conclude that the [change order request] is unreasonable under the circumstances.

S3H's response was adequate here. ICS requested a huge sum of money (indeed, $1,236,5400 substantially exceeds the $805,000 the parties initially agreed to for ICS's work), and S3H had only 30 days to respond. Under such circumstances, S3H was entitled to claim that the request was unreasonable. As such, ICS cannot rely on NRS 624.626 to recover damages against S3H.

*The District Court Properly Concluded ICS Could Not Prove Most of Its Claimed Damages*

ICS contends that the district court erred in finding that it proffered insufficient proof of its damages related to premium time and shift work. We disagree. Generally, this court reviews a fact-finder's damages decision for substantial evidence. *Wyeth v. Rowatt*, 126 Nev. 446, 470, 244 P.3d 765, 782 (2010). "[T]he burden of establishing damages lies on the injured party." *Cent. Bit Supply, Inc. v. Waldrop Drilling & Pump, Inc.*, 102 Nev. 139, 142, 717 P.2d 35, 37 (1986).

Here, the district court's decision to deny damages for premium time and shift work is supported by substantial evidence. The record does not show the number of premium hours worked, much less the number worked because of S3H. The same is true for added manpower. ICS relies on a payroll printout that merely shows the amounts paid to workers over certain months without an itemization of regular time versus premium time. The printout does not indicate which workers were added to the project because of S3H's directive to add manpower. Therefore, the district court properly concluded ICS's evidence did not support its claim for damages.

ICS also contends that the district court should have employed a "total cost method" to calculate ICS's damages. "Use of this method is highly disfavored by the courts, because it blandly *assumes*—that every penney [sic] of the plaintiff's costs are *prima facie* reasonable, that the bid was accurately and reasonably computed, and that the plaintiff is not responsible for any increases in cost." *Youngdale & Sons Const. Co., Inc. v. United States*, 27 Fed. Cl. 516, 541 (1993). Most jurisdictions allowing the total cost method have adopted a four-part test to offset the methodology's deficiencies. "[T]he contractor must show: (1) the impracticability of proving actual losses directly; (2) the reasonableness of its bid; (3) the reasonableness of its actual costs; and (4) lack of responsibility for the added costs." *Servidone Const. Corp. v. United States*, 931 F.2d 860, 861 (Fed. Cir. 1991).

Here, the district court "decline[d] in this case to adopt [the total cost] approach given the documentary information which was available to the parties . . . to establish the amount as sought by ICS." Therefore, the district court found that ICS failed to show "the impracticability of proving actual losses directly." *Servidone Const. Corp.*, 931 F.2d at 861. Substantial evidence supports the district court's finding. *See Weddell v. H2O, Inc.*, 128 Nev., Adv. Op. 9, 271 P.3d 743, 748 (2012) (stating this court reviews factual findings for clear error and substantial evidence); *see also Wyeth*, 126 Nev. at 470, 244 P.3d at 782. Our review of the record supports the district court's conclusion that it was not impracticable for ICS to prove its damages directly. ICS required its workers to fill out detailed and itemized time cards for payroll, but these documents were apparently never submitted to the district court. The payroll information admitted into evidence does not show premium time or

shift work. Evidence that could have been synthesized into useful information—like daily job reports—was left in raw form. Therefore, we will not disturb the district court's finding that the total cost approach is inappropriate here.

*Substantial Evidence Supports the District Court's $51,415.48 Award to ICS*

S3H argues that the district court erred in awarding ICS a substantial portion of its $51,415.48 in damages because S3H paid ICS that money long before trial. Although the record shows conflicting evidence, we ultimately conclude that the district court's award is supported by substantial evidence. *See Wyeth*, 126 Nev. at 740, 244 P.3d at 782; *see also Weddell*, 128 Nev., Adv. Op. 9, 271 P.3d at 748.

ICS and S3H both rely on man-made spreadsheets purporting to summarize amounts that either were or were not paid to ICS. The district court was in a unique position to determine which document was more credible and concluded that the documents supporting a $51,415.48 award were accurate. The district court's decision is supported by the fact that the credited documents purported to be more recent. Additionally, ICS's president testified that the credited spreadsheets summarized unpaid, completed work that was beyond the scope of the parties' original agreement. Despite conflicting evidence, S3H has failed to show that the district court's finding was clearly erroneous or unsupported by substantial evidence.

*ICS's Mechanic's Lien Claim and Unjust Enrichment Claim Do Not Fail as a Matter of Law*

S3H claims that ICS's mechanic's lien claim fails because it purported to secure expenses for premium time and shift work, and the district court did not award ICS damages for those particular costs. Again, we disagree. Lien claimants can seek compensation for work,

material, or equipment provided to any improvement. NRS 108.222(1). ICS's Notice of Mechanic's Lien and complaint state that it seeks payment for unpaid work, materials, and equipment. Therefore, S3H's contention is meritless.

S3H also contends that it was not unjustly enriched by ICS's work. This argument was not sufficiently developed during briefing and oral argument; therefore, we decline to rule on it. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (stating this court need not consider claims that are not cogently argued or supported by relevant authority).

*The District Court's Attorney Fees Awards Lack Sufficient Detail*

ICS contends that there was no discernable legal basis for the district court to award attorney fees to S3H. We agree. "The district court may award attorney fees only if authorized by a rule, contract, or statute." *Barney v. Mt. Rose Heating & Air Conditioning*, 124 Nev. 821, 825, 192 P.3d 730, 733 (2008). This court reviews the district court's award for abuse of discretion. *Id.* A district court may abuse its discretion when awarding attorney fees without "'sufficient reasoning and findings in support of its ultimate determination.'" *Id.* at 829, 192 P.3d at 736. (quoting *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 865, 124 P.3d 530, 549 (2005)). There is no apparent statutory or contractual basis for S3H to recover attorney fees. *See* NRS 108.2275(6), NRS 108.237(3). Therefore, the district court abused its discretion and this court must reverse and remand the issue of S3H's attorney fees award.

Second, the parties dispute whether the district court properly reduced ICS's attorney fees award. We find nothing in the record showing that the district court reduced ICS's award, much less why. Therefore, the

Supreme Court
of
Nevada

(O) 1947A

9

district court abused its discretion by failing to provide a sufficient explanation of its ultimate attorney fees award to ICS. As such, we reverse and remand ICS's attorney fees award for a more detailed determination.[2]

Accordingly, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Parraguirre

I concur:

_____, J.
Douglas

cc:    Hon. Elizabeth Goff Gonzalez, District Judge
Stephen E. Haberfeld, Settlement Judge
Gordon & Rees, LLP
Gordon Silver
Eighth District Court Clerk

---

[2]S3H also contends that NRS 17.115 and NRCP 68 bar ICS from recovering attorney fees while also making S3H eligible to recover such fees. Even if true, this court must reverse and remand the issue of attorney fees because the district court's order contains insufficient detail for meaningful review. Therefore, we do not reach this argument.

CHERRY, J., dissenting:

I disagree with my colleagues in the majority wherein they affirmed the district court order awarding Insulation Contracting Supply (ICS) $51,415.48 after a bench trial.

I agree with S3H that ICS waived all material claims by signing an unconditional waiver and accepted payment and that it was error for the district court to decline to enforce that waiver.

The real issue is whether ICS was paid in full when it accepted $440,546.64 from S3H.

The district court necessarily found that S3H agreed to pay ICS $601,001 by means of a settlement. However, it seems doubtful that there was a meeting of the minds due to the fact that the parties' settlement expectations were conflicting and the sum determined by the district court was by "necessary implication" rather than by factual analysis.

There also appears to be a lack of credibility on the part of ICS. ICS had requested $1,236,540 from S3H due to change orders. This damage claim was denied by the district court. The district court held that ICS proffered insufficient proof of its damages related to premium time and shift work. There is no doubt that the district court did not give any credence to ICS's extravagant damages claim for premium time and shift work. This makes the damage owed to ICS of $51,415.48 suspect. In an attempt to garner more damages from S3H, ICS was definitely not candid with the district court and therefore should not be awarded any further damages than the $440,546.64 already paid by S3H.

For these reasons I respectfully dissent.

_____, J.
Cherry

SUPREME COURT
OF
NEVADA

(O) 1947A