133 Nev., Advance Opinion 103

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THE STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY, FINANCIAL INSTITUTIONS DIVISION, Appellant, vs. DOLLAR LOAN CENTER, LLC, A DOMESTIC LIMITED LIABILITY COMPANY, Respondent. | No. 70002 **FILED** DEC 2 6 2017 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY S. Young DEPUTY CLERK |

Appeal from a district court order in a proceeding under NRS 29.010. Eighth Judicial District Court, Clark County; Mark R. Denton, Judge.

*Reversed and remanded.*

Adam Paul Laxalt, Attorney General, Lawrence J.C. VanDyke, Solicitor General, William J. McKean, Chief Deputy Attorney General, David J. Pope, Senior Deputy Attorney General, and Rickisha L. Hightower-Singletary and Vivienne Rakowsky, Deputy Attorneys General, Carson City,
for Appellant.

Holland & Hart LLP and Patrick John Reilly and Erica C. Smit, Las Vegas,
for Respondent.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

In this appeal, we must determine whether a payday loan licensee can sue to collect on the recovery of a loan made for the purpose of

17-44424

refinancing prior loans under NRS 604A.480(2). We conclude that NRS 604A.480(2)(f) bars a licensee from bringing any type of enforcement action on a refinancing loan made under NRS 604A.480(2). Because the district court erred in concluding that NRS 604A.480 does not prohibit certain payday loan licensees from filing suit against borrowers who default on the loans, we reverse.

## I.

Responding to a so-called "debt treadmill," the 2005 Legislature enacted Assembly Bill (A.B.) 384, later codified as NRS Chapter 604A, to regulate the payday loan industry. *See* A.B. 384, 73d Leg. (Nev. 2005); 2005 Nev. Stat., ch. 414, at 1683.

Included in the statutory scheme is the regulation of deferred deposit loans and high-interest loans. *Id.* Deferred deposit loans are those in which the borrower provides a check or authorization for the electronic transfer of funds on a future date in exchange for a loan. NRS 604A.050. A high-interest loan is a loan that charges an annual interest rate greater than 40 percent. NRS 604A.0703. Both deferred deposit and high-interest loans generally have an original loan term limited to 35 days. NRS 604A.408. If a borrower cannot repay the loan within 35 days, NRS 604A.480 is implicated. When the Legislature passed A.B. 384, it included a provision which allowed for a refinancing agreement with a 60-day extension beyond the term of the original loan. NRS 604A.480(1); *see* 2005 Nev. Stat., ch. 414, at 1683.

Under subsection 1 of NRS 604A.480, a licensee must not "establish or extend the period for the repayment, renewal, refinancing or consolidation of an outstanding loan . . . beyond 60 days after the expiration of the initial loan period." Further, the licensee must "not add any unpaid interest or other charges accrued during the original term of

(O) 1947A

the outstanding loan or any extension of the outstanding loan to the principal amount of the new deferred deposit loan or high-interest loan." *Id.* However, under NRS 604A.480(2), certain new deferred deposit or high-interest loans are exempt from subsection 1's restrictions.

NRS 604A.480(2) allows a licensee to offer a new loan to satisfy an outstanding loan for a period of not less than 150 days and at an interest rate of less than 200 percent. NRS 604A.480(2)(a)(1), (3). However, the licensee must follow all of the specific requirements in NRS 604A.480(2) for the new loan to be exempted from the provisions of subsection 1. The requirement at issue in this appeal is NRS 604A.480(2)(f), which permits a loan to be made under subsection 2 so long as the licensee "[d]oes not commence any civil action or process of alternative dispute resolution on a defaulted loan or any extension or repayment plan thereof."

Over the years, NRS 604A.480(2)(f) has been interpreted by appellant Nevada Department of Business and Industry, Financial Institutions Division (the FID); the Office of the Attorney General; and the Legislative Counsel Bureau (LCB). In December 2009, the FID issued a declaratory order and advisory opinion regarding mandatory disclosures for loans made pursuant to NRS 604A.480(2). State, Dep't of Bus. & Indus., Fin. Inst. Div., Declaratory Order and Advisory Opinion Regarding Mandatory Disclosures for Loans Made Pursuant to NRS 604A.480 (2009). In that opinion, the FID stated that "civil action and alternative dispute resolution are specifically prohibited in loans made pursuant to NRS 604A.480." *Id.* at 5. The FID also determined that a "consumer should not feel that he is subject to civil action when, in fact such actions are prohibited by law." *Id.* at 6.

Similarly, in October 2012, the Office of the Attorney General responded to a request for an opinion on whether the language in NRS 604A.480(2)(f) applies only to actions to collect on the outstanding loan, or also to the new loan being used to pay the balance of an outstanding loan. 2012-06 Op. Att'y Gen. 1 (2012). Referencing both the FID opinion and the legislative history and public policy behind NRS Chapter 604A, *id.* at 1-3, the Attorney General concluded that NRS 604A.480(2)(f) "applies to both an outstanding loan as well as a new loan" used to pay off the outstanding loan, *id.* at 4.

However, in July 2011, the LCB issued an opinion that the restrictions and requirements in subsection 2 "are not affirmative prohibitions against a licensee." Letter from Brenda J. Erdoes, Legislative Counsel, to Assemblyman Marcus Conklin (July 26, 2011) (discussing the provisions of NRS 604A.480). The LCB further determined that subsection 2(f) does not prohibit licensees from "commencing any civil action or process of alternative dispute resolution against a customer who subsequently defaults" on a new loan made under NRS 604A.480(2). *Id.*

Respondent Dollar Loan Center (DLC) sought judicial interpretation of NRS 604A.480(2)(f) by filing a declaratory relief action against FID in the district court. The parties thereafter agreed to convert the controversy into a proceeding under NRS 29.010.[1]

---

[1]NRS 29.010 states that

> [p]arties to a question in difference, which might be the subject of a civil action, may, without action, agree upon a case containing the facts upon which the controversy depends, and present a submission of the same to any court which should have jurisdiction if an action had been brought. But it must appear, by affidavit, that the

*continued on next page . . .*

After the district court concluded that NRS 604A.480(2) "contains no prohibition of any kind against a licensee, but are merely the conditions precedent that must be satisfied for a licensee to be exempt from" NRS 604A.480(1)'s requirements, FID filed this appeal.

## II.

The parties in this appeal disagree as to whether: (1) NRS 604A.480(2)(f) bars a licensee that provides a loan under NRS 604A.480(2) from bringing any type of enforcement action on that refinanced loan when the debtor defaults; or (2) the provision operates as a condition precedent to making a refinancing loan under that statute, and therefore, does not bar a subsequent action to enforce the refinanced loan. We are presented with the narrow question of whether a licensee can sue to collect on the recovery of a loan under NRS 604A.480(2) made for the purpose of refinancing prior loans.[2]

---

*. . . continued*

controversy is real, and the proceedings in good faith, to determine the rights of the parties. The court shall thereupon hear and determine the case and render judgment thereon, as if an action were pending.

[2]Following oral argument, FID sought clarification concerning the application of NRS 604A.480(2)(f) to original loans purportedly made pursuant to NRS 604A.480(2). By the terms of the statute, the proceeds of a "new deferred deposit loan or high-interest loan" made under either subsection 1 or 2 of NRS 604A.480 are for "the repayment, renewal, refinancing or consolidation of an outstanding loan" only. Thus, we conclude that original loans can't be made pursuant to NRS 604A.480(2).

## A.

This court reviews questions of statutory construction de novo. *Pub. Emps.' Ret. Sys. of Nev. v. Reno Newspapers, Inc.*, 129 Nev. 833, 836, 313 P.3d 221, 223 (2013). "[S]tatutes with a protective purpose should be liberally construed in order to effectuate the benefits intended to be obtained." *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 40, 175 P.3d 906, 908 (2008) (internal quotation marks omitted). Furthermore, statutory interpretation must "not render any part of the statute meaningless," or "produce absurd or unreasonable results." *Orion Portfolio Servs. 2, LLC v. Cty. of Clark ex rel. Univ. Med. Ctr. of S. Nev.*, 126 Nev. 397, 403, 245 P.3d 527, 531 (2010).

## B.

The Legislature enacted laws in 2005 governing deferred deposit and high-interest loans, codified as NRS Chapter 604A. *See* A.B. 384, 73d Leg. (Nev. 2005); 2005 Nev. Stat., ch. 414, at 1683. The policy purpose of NRS Chapter 604A was to stop the "debt treadmill" where a borrower is unable to repay a loan and often takes out a larger loan to cover the principal, interest, and fees from the unpaid original loan. *See, e.g.*, Hearing on A.B. 384 Before the Senate Comm. on Commerce & Labor, 73d Leg. (Nev., May 6, 2005). We, therefore, view the refinancing provisions of NRS 604A.480 as having a protective purpose requiring a liberal construction to effectuate its intended benefits. *See Cote H.*, 124 Nev. at 40, 175 P.3d at 908.

NRS 604A.408(1) provides a maximum term of 35 days for an original deferred deposit or a high-interest loan. When a borrower cannot pay the loan in full within 35 days, "the repayment, renewal, refinancing or consolidation" of an outstanding loan may not be extended beyond 90 days. NRS 604A.408(3). Thereafter, under NRS 604A.480, the borrower

may take out a new deferred deposit or high-interest loan and use the proceeds of that loan to repay or refinance the balance of an outstanding loan. NRS 604A.480 offers two loan options for when a licensee and borrower enter into an agreement to use a new loan to satisfy an existing loan. The first option, under subsection 1, restricts the term of the new loan to 60 days and prohibits the licensee from "add[ing] any unpaid interest or other charges accrued during the original term of the outstanding loan . . . to the principal amount of the new deferred deposit loan or high-interest loan." The second option, under subsection 2, exempts the new loan from subsection 1's restrictions where the licensee meets certain requirements, including the requirement relevant to this appeal—that the licensee "[d]oes not commence any civil action or process of alternative dispute resolution on a defaulted loan or any extension or repayment plan thereof," NRS 604A.480(2)(f).

We conclude that the plain language of NRS 604A.480(2) expressly permits a licensee to offer a new deferred deposit or high-interest loan that is not subject to the sixty-day restriction or principal-adjustment prohibition of subsection 1. However, when the licensee does so, the licensee is subject to all of the statute's limitations, including NRS 604A.480(2)(f), which bars a licensee from pursuing "any civil action or process of alternative dispute resolution *on a defaulted loan or any extension or repayment plan thereof.*" (Emphasis added.)

NRS 604A.065 defines "'[e]xtension'" as "any extension or rollover of a loan beyond the date on which the loan is required to be paid in full under the original terms of the loan agreement." Based on a plain reading, we conclude that this statutory definition applies to extensions of the original loan. And, construing the statutes as a whole, we further conclude that, if a licensee issues a new deferred deposit loan or a new

high-interest loan to a borrower in order to pay the balance of an outstanding loan on terms set forth in NRS 604A.480(2)(a),[3] the licensee foregoes the right to file a civil action or institute alternative dispute resolution proceedings on that new loan pursuant to NRS 604A.480(2)(f). *See Banegas v. State Indus. Ins. Sys.*, 117 Nev. 222, 229, 19 P.3d 245, 250 (2001) ("[W]ords within a statute must not be read in isolation, and statutes must be construed to give meaning to all of their parts and language within the context of the purpose of the legislation.").

## C.

DLC argues that the plain meaning of NRS 604A.480(2) allows for a civil action on the original loan being refinanced or on a new subsection 2 loan because the conditions in subsections 2(a)-(f) serve as conditions precedent for a licensee to offer an extension or repayment loan for a longer term. In making this argument, DLC contends that subsection 2(f) applies to the original loan on which the licensee has not previously sued. We disagree. Such an interpretation would be contrary to the legislative purpose of the statute and would create absurd results as it would incentivize licensees to perpetuate the "debt treadmill" by making

---

[3]The terms of a new loan under subsection 2 may include an interest rate of "less than 200 percent" and a repayment term of "not less than 150 days." NRS 604A.480(2)(a).

additional loans under subsection 2 with a longer term and a much higher interest rate, which the licensee could ultimately enforce by a civil action. *See Orion Portfolio*, 126 Nev. at 403, 245 P.3d at 531 (stating that statutes should be interpreted so as not to "produce absurd or unreasonable results"). The bar against future civil action on loans made under subsection 2(f) puts an end to the debt treadmill.

We thus reverse the district court's order and remand this matter to the district court to enter a judgment consistent with this opinion.

_____, J.
Hardesty

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A

PICKERING, J., dissenting:

I would affirm the district court's decision, which correctly analyzes NRS 604A.480 according to its text and established rules of statutory interpretation.

NRS Chapter 604A regulates the payday and title lending industry. With certain exceptions, Nevada law generally prohibits a lender who is subject to Chapter 604A from issuing a new loan to pay off an existing deferred deposit or high-interest loan. NRS 604A.430(1). Two of those exceptions are set forth in NRS 604A.480, the statute at issue in this appeal.

NRS 604A.480 reads in full as follows:

> 1. Except as otherwise provided in subsection 2, *if a customer agrees in writing to establish or extend the period for the repayment, renewal, refinancing or consolidation of an outstanding loan by using the proceeds of a new deferred deposit loan or high-interest loan to pay the balance of the outstanding loan, the licensee shall not establish or extend the period beyond 60 days after the expiration of the initial loan period.* The licensee shall not add any unpaid interest or other charges accrued during the original term of the outstanding loan or any extension of the outstanding loan to the principal amount of the new deferred deposit loan or high-interest loan.
>
> 2. *This section does not apply to a new deferred deposit loan or high-interest loan if the licensee:*
>
> (a) Makes the new deferred deposit loan or high-interest loan to a customer pursuant to a loan agreement which, under its original terms:
>
> (1) Charges an annual percentage rate of less than 200 percent;

(2) Requires the customer to make a payment on the loan at least once every 30 days;

(3) Requires the loan to be paid in full in not less than 150 days; and

(4) Provides that interest does not accrue on the loan at the annual percentage rate set forth in the loan agreement after the date of maturity of the loan;

(b) Performs a credit check of the customer with a major consumer reporting agency before making the loan;

(c) Reports information relating to the loan experience of the customer to a major consumer reporting agency;

(d) Gives the customer the right to rescind the new deferred deposit loan or high-interest loan within 5 days after the loan is made without charging the customer any fee for rescinding the loan;

(e) Participates in good faith with a counseling agency that is:

(1) Accredited by the Council on Accreditation of Services for Families and Children, Inc., or its successor organization; and

(2) A member of the National Foundation for Credit Counseling, or its successor organization; and

(f) Does not commence any civil action or process of alternative dispute resolution on a defaulted loan or any extension or repayment plan thereof.

(emphasis added).

The district court read NRS 604A.480 as permitting two types of arrangements by which a Chapter 604A lender can extend or make a new

Supreme Court
of
Nevada

(O) 1947A

2

loan to pay off an existing deferred deposit or high-interest loan. First, the lender can enter into a Subsection 1 agreement by which the "customer agrees in writing to establish or extend the period for the repayment, renewal, refinancing or consolidation of an outstanding loan by using the proceeds of a new deferred deposit loan or high-interest loan to pay the balance of the outstanding loan." If the customer agrees to such an action on an outstanding loan, then what the district court referred to as the "Subsection 1 Prohibitions" apply. The Subsection 1 Prohibitions provide that, as part of an agreement entered into under NRS 604A.480(1), the lender "shall not" (i) "establish or extend the period beyond 60 days after the expiration of the initial loan period" or (ii) "add any unpaid interest or other charges accrued during the original term of the outstanding loan or any extension of the outstanding loan to the principal amount of the new deferred deposit loan or high-interest loan."

Second, the lender and consumer can agree to a new loan that meets the requirements of Subsection 2 of NRS 604A.480. Subsection 2 creates an alternative to a Subsection 1 agreement that avoids the Subsection 1 Prohibitions but imposes additional, different conditions. Under Subsection 2, a lender can offer its borrower a new loan to pay off an outstanding loan—including one as to which the lender and borrower have entered into a failed extension or renewal plan under Subsection 1—without being subject to Subsection 1's single-shot sixty-day limitation or rule against adding unpaid interest from the original loan to the principal of the new loan. *See also* NRS 604A.430(1)(c) (permitting a $50 fee to be charged for preparing documents in connection with an NRS 604A.480(2) loan). But, to issue a new loan to pay off an existing loan under Subsection 2, the lender must comply with all the conditions precedent listed in the six lettered

SUPREME COURT
OF
NEVADA

(O) 1947A

3

subparagraphs of Subsection 2. NRS 604A.480(2) ("This section does not apply to a new deferred deposit loan or high-interest loan *if* the licensee . . . .") (emphasis added). Each of the lettered subparagraphs is phrased in the present tense, as of the date the lender "[m]akes the new deferred deposit loan or high-interest loan," NRS 604A.480(2)(a), including the condition precedent that the lender "[d]oes not commence any civil action or process of alternative dispute resolution on a defaulted loan or any extension or repayment plan thereof." NRS 604A.480(2)(f). Consistent with its structure and verb tense, the district court concluded:

> Subsection 2 contains no prohibition of any kind against a licensee [NRS Chapter 604A licensed lender], but are merely the conditions precedent that must be satisfied for a licensee [lender] to be exempt from the Subsection 1 Prohibitions. *NRS 604A.480 therefore contains no prohibition against a licensee from initiating civil suits or alternate dispute resolution proceedings against a debtor that is in default. Rather, NRS 604A.480 only provides that a licensee cannot be exempt from the requirements set forth in NRS 604A.480(1) "if" the licensee has already commenced any civil action or process of alternative dispute resolution against a debtor.*

(emphasis added).

The majority takes a different tack. In its view, the purpose of NRS Chapter 604A is to prevent the consumer debt treadmill. Consistent with that perceived purpose, it reads Subsection 2 to require, not just that the lender not have strong-armed the customer-in-default by suing him on the defaulted loan (or any extension or repayment plan thereof) before making the new loan, but that the lender agree, in making the Subsection 2 loan, *never* to sue on the debt, old or new. But this reading cannot be squared with the text of NRS 604A.480(2) and the verb tenses it employs.

Even more fundamentally, it cannot be squared with NRS 604A.415, which authorizes lenders to resort to civil actions to collect loans made under NRS Chapter 604A with no exception for NRS 604A.480(2) loans. Nor does it make common sense: What lender will make a new loan to pay off an existing loan knowing that, in doing so, the loan being made cannot be collected upon default? Is such an arrangement even a loan?

I agree with the district court, which read NRS 604A.480(2) to require, as one of its several conditions precedent, that the lender not have sued on the defaulted loan being paid off with the proceeds of the NRS 604A.480(2) loan being made. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.") (Kennedy, J.). This reading is consistent with the statute's text, gives effect to all its terms, and makes practical sense. As I would affirm, not reverse, I respectfully dissent.

_Pickering_ , J.
Pickering