142 Nev., Advance Opinion 24

IN THE SUPREME COURT OF THE STATE OF NEVADA

<table>
<tr><td>AMERICAN CIVIL LIBERTIES UNION OF NEVADA,<br>Appellant,<br>vs.<br>CLARK COUNTY SCHOOL DISTRICT,<br>Respondent.</td><td>No. 88680<br><br>FILED<br>MAR 2 6 2026<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK</td></tr>
</table>

Appeal from a district court order denying in part and granting in part a petition for a writ of mandamus in a public records matter. Eighth Judicial District Court, Clark County; Danielle Pieper, Judge.

*Affirmed.*

American Civil Liberties Union of Nevada and Christopher M. Peterson and Jacob Smith Valentine, North Las Vegas,
for Appellant.

Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, and Jackie V. Nichols, Las Vegas,
for Respondent.

Kaempfer Crowell and Lyssa S. Anderson, Kristopher J. Kalkowski, and Travis C. Studdard, Las Vegas,
for Amici Curiae Washoe County Sheriff's Office, Carson City Sheriff's Office, Douglas County Sheriff's Office, City of Sparks, City of Elko Police Department, City of North Las Vegas, North Las Vegas Police Department, Nevada Sheriffs' and Chiefs' Association, and Las Vegas Metropolitan Police Department.

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

*OPINION*

By the Court, BELL, J.:

State agencies must promptly release public documents requested under the Nevada Public Records Act (NPRA), NRS Chapter 239. The NPRA carves out exceptions for certain confidential documents, however. Relevant here, the NPRA excepts from its disclosure requirements documents covered by NRS 289.080, which makes confidential information relating to internal investigations of peace officers for misconduct. When read as a whole, we conclude that NRS 289.080 makes confidential, and thus exempts from NPRA disclosure, the file concerning an internal investigation of a peace officer.

*FACTS AND PROCEDURAL HISTORY*

On February 9, 2023, a video circulated on social media depicting a Clark County School District (CCSD) police officer grabbing, throwing, and pinning down a juvenile outside of Durango High School in Las Vegas. After the incident, the American Civil Liberties Union of Nevada (ACLU) sought records relating to the incident from the school district. CCSD responded three weeks later with only limited information related to employee training. In its response, CCSD asserted privileges and justifications in defense of the limited disclosure.

After receiving this first batch of records, the ACLU reiterated its initial request and explained that Nevada law required a list identifying the withheld records, along with a specific invocation of privilege for each document. CCSD then sent the ACLU a compiled list of justifications for

denying the records request. Specifically, CCSD asserted certain documents were exempt from disclosure because they were evidence in an ongoing employment investigation of the officer, citing NRS Chapter 289.

In response, the ACLU filed a petition for a writ of mandamus with the district court, seeking an order compelling CCSD to release its records pursuant to the NPRA. After several rounds of briefing, the district court ordered CCSD to provide a privilege log. In the log, CCSD listed thirteen pages of records and reiterated its justifications for nondisclosure. The ACLU challenged the asserted privileges and claimed that CCSD failed to sufficiently demonstrate how the privileges applied to the records. CCSD replied, arguing the balance of equities leaned in favor of not releasing the investigative file.

After a hearing and supplemental briefing, the district court issued a final order, finding that the body-worn camera footage of the incident, the citation, the incident report, and the dispatch log were public records subject to disclosure with specific redactions. The court also found the internal affairs investigation report and most of the records within the investigative file were confidential and not subject to disclosure under the NPRA. The ACLU appeals.

## DISCUSSION

On appeal, the ACLU raises the issue of whether the district court properly precluded disclosure of CCSD's investigative file under the NPRA and NRS 289.080. We review a district court's decision to grant or deny a writ petition for an abuse of discretion, but when the writ petition raises questions of statutory interpretation, we review de novo. *Reno Newspapers, Inc. v. Washoe Cnty. Sheriff*, 126 Nev. 211, 214, 234 P.3d 922, 924 (2010). We "construe statutes as a whole, so that all provisions are

considered together." *Orion Portfolio Servs. 2, LLC v. County of Clark ex rel. Univ. Med. Ctr. of S. Nev.*, 126 Nev. 397, 403, 245 P.3d 527, 531 (2010). In addition, we will not read the statute's language "so as to produce absurd or unreasonable results." *Id.* Because NRS 289.080 prevents the officer under investigation from accessing the investigative file unless the investigating agency recommends punitive action, we conclude that information within the investigative file is exempt from disclosure under the NPRA.

Generally, the NPRA presumes disclosure of public records: "all public books and public records of a governmental entity must be open at all times during office hours to inspection by any person." NRS 239.010(1). We have previously held that rebutting this presumption requires either an explicit statute making the record confidential or a conclusion that a privacy or law enforcement interest outweighs the public's interest in the information. *See Reno Newspapers*, 126 Nev. at 212, 234 P.3d at 923. This case involves the statutory means of rebuttal.

The Nevada Legislature included within NRS 239.010(1) exemptions from the NPRA's general disclosure requirements, including NRS 289.080. We previously reasoned in *Clark County Office of the Coroner/Medical Examiner v. Las Vegas Review-Journal* that the NPRA's mandate of presumed transparency requires any exceptions to be construed narrowly. 136 Nev. 44, 50, 458 P.3d 1048, 1054 (2020); *see also* NRS 239.001(3). In that case, a newspaper requested five years of juvenile autopsy records from the coroner's office. 136 Nev. at 46, 458 P.3d at 1051. The NPRA exempted from its purview the subject of a statute concerning the operation of coroners' child-death review teams, which the coroner's office used to deny the request. We narrowly interpreted the statute and

concluded that only records "acquired by" the review team were confidential based on the language of the specific statute. *Id.* at 54, 458 P.3d at 1057. We further concluded the protective language of the statute applied only to the review team and not to any other agency, regardless of review team activity. *Id.* Thus, the NPRA exemption did not serve as a categorical justification to withhold all juvenile autopsy records. *Id.* at 50, 458 P.3d at 1054. Consequently, the scope of what may be withheld from disclosure reflects the scope of what is made confidential by a listed statute.

Here, NRS 289.080 prescribes rights afforded to peace officers during an internal investigation into an officer's alleged misconduct, including the right to have a representative. NRS 289.080(1)-(3). The officer's representative may assist the officer, clarify answers given by the officer, and refute any negative implications within the officer's responses to questioning. NRS 289.080(3), (4). Notably, NRS 289.080(6) and (7) provide that information the representative obtains from the peace officer "is confidential and must not be disclosed." Finally, if the investigating agency ultimately recommends punitive action, NRS 289.080(9) requires the officer be given an opportunity to review "any evidence" in the agency's possession and the opportunity to submit a response. Should the officer then appeal the agency's decision to impose punitive action, the statute gives the officer and their representative the right to review and copy "the entire file concerning the internal investigation, including . . . evidence, recordings, notes, transcripts of interviews and documents contained in the file." NRS 289.080(9).

The ACLU argues that a narrow reading of the statute explicitly deems confidential only the information an officer's representative receives from a peace officer in the course of the

investigation. This position fails to take into account that even the officer being investigated is not entitled to the contents of the entire investigative file unless and until the investigating agency recommends punitive action against the officer. NRS 289.080(9).

Taking the ACLU's interpretation to its logical conclusion would potentially result in a file being publicly available through the NPRA even though the peace officer under investigation could not access the entirety of the file under NRS 289.080. This renders an illogical result and contravenes the overall purpose of the statute, which is to provide due process rights to peace officers under investigation. Our reading of NRS 289.080 indicates the legislature intended to exclude these documents from disclosure, at least absent a law enforcement agency recommending adverse employment action. Accordingly, we conclude the district court correctly interpreted NRS 289.080 to bar disclosure of the investigative file in this case.

Our decision here is a narrow one. Nothing in this opinion should be construed as excising or amending our prior NPRA jurisprudence. We write today to clarify only that information contained in an investigative file is exempt from the NPRA's general disclosure requirement to the extent the information is confidential under NRS 289.080.

## *CONCLUSION*

The Nevada Legislature included NRS 289.080 in its list of statutes that create exemptions from the NPRA's general disclosure requirements. We read the statute and its mention in the NPRA to bar disclosure of an investigative file of a peace officer subject to an internal affairs investigation as a public record to the same extent its disclosure is

prevented under NRS 289.090. Accordingly, we affirm the judgment of the district court.

_____, J.
Bell

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich