138 Nev., Advance Opinion 68

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF MARILYN WEEKS SWEET, DECEASED. | No. 83342-COA |
| CHRISTY KAY SWEET, Appellant, vs. CHRIS HISGEN, Respondent. | |



FILED

OCT 20 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order admitting a will to probate.

Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

*Affirmed.*

Dickinson Wright PLLC and Kerry E. Kleiman and Michael N. Feder, Las Vegas,
for Appellant.

Blackrock Legal, LLC, and Thomas R. Grover and Michael A. Olsen, Las Vegas,
for Respondent.

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., TAO and BULLA, JJ.

*OPINION*

By the Court, GIBBONS, C.J.:

In this appeal, we consider whether the district court properly admitted a will to probate that was drafted by or for the decedent in

22-32987

Portugal and was written in Portuguese, where the decedent was domiciled in Maryland and the pertinent property of the estate at death was a house in Nevada. At issue is whether the will was valid under the Uniform International Wills Act—codified as NRS Chapter 133A—and in particular, whether the will was signed by an "authorized person," who acts as a supervising witness, under the Act. Alternatively, we address whether a district court may properly admit a will to probate under NRS Chapter 133 if it is not valid under NRS Chapter 133A. Finally, we are asked to interpret the scope of the devise made under the language of the will.

We conclude that the laws of relevant foreign states must be taken into consideration when evaluating the identity of an "authorized person" for the purpose of implementing the Uniform International Wills Act. Additionally, we conclude that the plain and ordinary meaning of the relevant statutes provides for a will to be probated under NRS Chapter 133 if it fails to conform with NRS Chapter 133A. We also conclude that the district court did not err in applying the will at issue here to the decedent's entire estate and that appellant was not entitled to a will contest during the proceedings below. For the reasons articulated herein, we affirm the district court's order.

## FACTS AND PROCEDURAL HISTORY

In 2006, Marilyn Weeks Sweet, then domiciled in Maryland, executed a will in Tavira, Portugal. The will was written in Portuguese. It was signed and overseen by a notary, and it bore the signatures of two additional witnesses, which were notarized. In 2020, Marilyn died in Nevada. Her estate at the time of her death was comprised of one home in Las Vegas, titled in her name and worth an estimated $530,085.

Respondent Chris Hisgen, Marilyn's surviving spouse, filed a petition for general administration of the estate and to admit the will to

probate. Hisgen attached a translation of the will to his petition. The translation was done by Lori Piotrowski and reads as follows, in pertinent part:

> [Marilyn Weeks Sweet] establishes as universal heir of all her goods, rights, and actions in Portugal, Christopher William Hisgen,[1] single, adult, native Washington, DC, United States of America, of American nationality with whom she resides.
>
> Should he have already died, on the date of her death, Kathryn Kimberly Sweet, married, resident of Arlington, Virginia, United States of America and Christy Kay Sweet, single, adult, resident of Thailand, will be her heirs.

Also attached to the petition was a waiver of notice signed by Kathryn Kimberly Sweet, one of Marilyn's daughters.

Appellant Christy Kay Sweet (Sweet), Marilyn's other daughter, filed an objection to Hisgen's petition, arguing that the will could not be probated in Nevada because it was signed in a foreign country. Sweet further argued that the will applied only to property in Portugal and did not include the Nevada home. Hisgen filed a reply in support of his petition, attaching three declarations. One was from a witness, attesting that the individual had witnessed Marilyn execute the will. The other two declarations appear to be from the same person, Isabel Santos—apparently a Portuguese attorney and also a witness to Marilyn's will.[2] In one declaration, Santos attested that she had witnessed Marilyn execute the

---

[1]In Portuguese, the will reads, in pertinent part, "[Marilyn Weeks Sweet] [i]nstitui herdeiro universal de todos os seus bens, direitos e acções em Portugal, Christopher William Hisgen . . . ."

[2]One of the declarations is titled "Declaration of Isabel Pires Cruz Santos." The other is titled "Declaration of Drª Maria Isabel Santos." Both declarations bear the same signature, which reads Isabel Pires Cruz Santos.

will. In the other, Santos attested that the will was valid under Portuguese law. She additionally offered a translation of the will that differed slightly from Piotrowski's translation. The Santos translation reads, in pertinent part, "[Marilyn Weeks Sweet] [e]stablishes universal heir to all her assets, rights and shares in Portugal, Christopher William Hisgen . . . ."

Following a hearing, the probate commissioner issued a report and recommendation (R&R) regarding Hisgen's petition. The probate commissioner concluded that the will was a valid international will under NRS Chapter 133A. He alternatively concluded that even if the will was invalid under NRS Chapter 133A, it could nevertheless be probated under NRS 133.040.[3] Finally, the probate commissioner concluded that the will applied to the entire estate rather than only property situated in Portugal. The probate commissioner therefore recommended that the will "be admitted to probate under either NRS 133A.060 or NRS 133.040-[.]050" and "be interpreted to dispose of the entirety of the [e]state to [Hisgen]."

Sweet filed an objection to the commissioner's R&R, and the district court held a hearing where the parties largely repeated the arguments made before the probate commissioner. The only notable difference between the hearings was that there was discussion before the court as to whether the will was valid under NRS 133.080 (foreign execution of wills) and no discussion as to NRS 133.040 (wills executed in Nevada). After the hearing, the district court issued an order affirming the probate

---

[3]NRS 133.040 provides the requirements for a valid will executed in Nevada. As discussed below, because the will was undisputedly executed in Portugal rather than Nevada, the district court erred in accepting the portion of the probate commissioner's R&R concluding that the will could be admitted to probate under NRS 133.040, as the applicable provision is NRS 133.080.

commissioner's R&R in its entirety and admitting the will to probate. Sweet timely appealed pursuant to NRS 155.190(2).

## ANALYSIS

Sweet raises four primary arguments on appeal. First, she argues the will did not meet the requirements for a valid international will under NRS Chapter 133A, Nevada's codification of the Uniform International Wills Act (UIWA). Second, she argues that the will could not otherwise be probated under NRS Chapter 133—primarily focusing her arguments on NRS 133.080(1) (foreign execution of wills). Third, Sweet argues the will applied only to property located in Portugal. And fourth, she argues, for the first time, that she was entitled to a will contest under NRS Chapter 137. We address each of her arguments in turn.

*The district court did not err in ruling that the will was a valid international will under NRS Chapter 133A*

Sweet argues the district court erred in ruling that the will was a valid international will under NRS Chapter 133A. She argues the will facially fails to comply with the requirements of that chapter because it lacks the signature of an "authorized person" under NRS 133A.030 (defining "authorized person" as a person admitted to practice law in Nevada or a person empowered to supervise the execution of international wills by the laws of the United States), does not include Marilyn's signature on each page, and does not include a certificate attesting compliance with the UIWA. Hisgen counters that Santos was an "authorized person" for overseeing the execution of Marilyn's will because she is licensed to practice law in Portugal. In the alternative, Hisgen argues that the Portuguese notary was an "authorized person" because "Nevada state law allows for the recognition of a foreign notarial act." He further argues that neither the absence of Marilyn's signature on each page of the will nor the absence of

the certificate of compliance is fatal to the validity of the will under NRS Chapter 133A.

The validity of a will is a question of law we review de novo. *See In re Estate of Melton*, 128 Nev. 34, 42, 272 P.3d 668, 673 (2012) (reviewing the validity of a handwritten will de novo). Further, "NRS 133A.020 to 133A.100, inclusive, derive from Annex to Convention of October 26, 1973, Providing a Uniform Law on the Form of an International Will. In interpreting and applying this chapter, regard must be given to its international origin and to the need for uniformity in its interpretation." NRS 133A.110.

At the outset, we note that the UIWA is found in the Annex to the Convention of October 26, 1973, Providing a Uniform Law on the Form of an International Will. Convention Providing a Uniform Law on the Form of an International Will, Resolution, art. I, ¶ 1, October 27, 1973, S. Treaty Doc. No. 99-29 [hereinafter ULIW Convention]. Use of the exact text of the Annex is mandatory in countries using primarily English, French, Russian, or Spanish languages. *Id.* Explanatory Report, S. Treaty Doc. No. 99-29 at 11. While the text may be translated to other languages, like Portuguese, the translators are not permitted to make even "small changes in the presentation or vocabulary of the Uniform Law." *Id.* Therefore, because of this uniformity, we may properly turn to Nevada's codification of the UIWA to determine if the will complies with the UIWA while keeping in mind the international origin of the act.

Nevada has adopted and codified the UIWA in NRS Chapter 133A. Within this chapter, the various requirements for a valid international will are established. Some of these requirements are mandatory to ensure the validity of an international will. *See* NRS 133A.060(2) (stating a will *must* be signed "in the presence of two witnesses

COURT OF APPEALS
OF
NEVADA

6

and of a person authorized to act in connection with international wills" (emphasis added)). However, failure to comply with other sections of the chapter are not fatal to the validity of the will. *See* NRS 133A.070(4) (explaining that a will executed in compliance with NRS 133A.060 "is not invalid merely because it does not comply with" NRS 133A.070(1)'s signature requirement); NRS 133A.090 ("The absence or irregularity of a certificate does not affect the formal validity of a will under [NRS Chapter 133A]."). Thus, even though Marilyn's will did not have a signature on each page or a certificate attached, these defects are not fatal to its validity. *See* NRS 133A.070; NRS 133A.090.

We now turn to whether Marilyn's will complied with the mandatory provisions of NRS 133A.060.[4] As we noted above, to be valid under NRS 133A.060(2), a will must be signed "in the presence of two witnesses and of a person authorized to act in connection with international wills." Nevada has defined an "authorized person" as either (1) a person admitted to practice law in Nevada and who is in good standing as an active law practitioner in Nevada, NRS 133A.120, or (2) a person empowered to supervise the execution of international wills "by the laws of the United States, including members of the diplomatic and consular service of the United States designated by Foreign Service Regulations," NRS 133A.030. Thus, a valid international will executed in Nevada would need to be signed by either a Nevada attorney or someone authorized under the laws of the

---

[4]The parties only challenge the mandatory provision of NRS 133A.060(2). They do not dispute the other mandatory provisions of NRS 133A.060, so we need not address them. *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("[I]n both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decisions and assign to courts the role of neutral arbiter of matters the parties present.").

United States to execute international wills. This requirement must be read with the understanding that regard is given to the "international origin" of this statute and the need for international uniformity in interpreting it. *See* NRS 133A.110.

The matter of determining an authorized person to execute a uniform international will is to be decided by each nation. *See* ULIW Convention, Resolution, art. I, ¶ 1, October 27, 1973, S. Treaty Doc. No. 99-29 ("Each Contracting Party may introduce into its law such further provisions as are necessary to give the provisions of the Annex full effect in its territory."); *id.* Resolution, art. II, ¶ 1 ("Each Contracting Party shall implement the provisions of the Annex in its law . . . by designating the persons who, in its territory, shall be authorized to act in connection with international wills."); *id.* Resolution, art. III ("The capacity of the authorized person to act in connection with an international will, if conferred in accordance with the law of a Contracting Party, shall be recognized in the territory of the other Contracting Parties."); *id.* Letter of Submittal, S. Treaty Doc. No. 99-29 at 8 ("Given the differing national practices and traditions with regard to the preparation of wills, the framers of the Convention left it to each individual state becoming party to the Convention to decide whom to delegate as its 'authorized person' . . . ."). Therefore, when determining if a purported international will, signed in another country, should be admitted to probate, the district court must first consider if it complied with the UIWA requirements[5] before turning to the laws of the signatory country to determine if the will was signed by an "authorized person."

---

[5]Codified in Nevada as NRS Chapter 133A.

Since the will was executed in Portugal, not Nevada, we must turn to Portuguese law to determine who an "authorized person" is. *See* ULIW Convention, Resolution, art. II, ¶ 1. We note logic and common sense would dictate this course of action. The purpose of an international will would be frustrated if testators were required to anticipate the exact location where their will would be admitted to probate when they created the will and identified an authorized person to sign the will. *See* S. Treaty Doc. No. 99-29, 31 ("A will shall be valid as regards form, irrespective particularly of the place where it is made, of the location of the assets and of the nationality, domicile or residence of the testator.").

In the present case, Sweet's reading of the statute would have required Marilyn, who apparently had no connection to Nevada at the time the will was created, to ignore Portuguese law and Maryland law to comply with Nevada law. This is an absurd requirement to read into the Convention Providing a Uniform Law on the Form of an International Will and NRS Chapter 133A, and we decline to do so. *See Gallagher v. City of Las Vegas*, 114 Nev. 595, 599-600, 959 P.2d 519, 521 (1998) (holding that statutory interpretation "should be in line with what reason and public policy would indicate the legislature intended, and should avoid absurd results").

At the outset of our analysis of Portuguese law, we note that Portugal signed the Convention Providing a Uniform Law on the Form of an International Will and consented to be bound to the document. U.S. Dep't of State, Providing a Uniform Law on the Form of an International Will, https://www.state.gov/wp-content/uploads/2021/08/Wills-status-table-7.26.21.pdf (official list of signatory countries); Decreto no.º 252/75 de 23 de maio [Decree no. 252/75 of 23 May], https://files.dre.pt/1s/1975/05/11900/07170722.pdf [https://perma.cc/LTP6-U5XP] (Portuguese decree signing on

COURT OF APPEALS
OF
NEVADA

9

to the Convention Providing a Uniform Law on the Form of an International Will).[6] Additionally, an "authorized person" as defined by Portugal will be recognized in Nevada, since the United States has also signed the convention and Nevada has adopted the Annex to the UIWA derived from the Convention. *See* ULIW Convention, Resolution, art. II, ¶ 1; U.S. Dep't of State, Providing a Uniform Law on the Form of an International Will, https://www.state.gov/wp-content/uploads/2021/08/Wills-status-table-7.26.21.pdf (official list of signatory countries); NRS 133A.110.

A notary is a designated "authorized person" in Portugal. *See* Decreto-Lei n.º 177/79, de 7 de junho [Decree-Law no. 177/79 of 7 June], art. 1, https://files.dre.pt/1s/1979/06/13100/12821283.pdf [https://perma.cc/6Z9U-83JZ] (Item 1 provides that each Contracting Party shall determine the persons empowered to deal with matters relating to the international will in its territory. Item 2 determines that Portuguese notaries will be authorized persons.).[7] Therefore, the signature of Joaquim August Lucas

---

[6]No official English translation of the source is available. Translation assistance was provided by the Law Library of Congress Global Research Directorate.

[7]No official English translation of the source is available. Translation assistance was provided by the Law Library of Congress Global Research Directorate and Google Translate. Relevant Portuguese text states,

> 1 — A Convenção Relativa à Lei Uniforme sobre a Forma de Um Testamento Internacional, aprovada para adesão pelo Decreto-Lei n.º 252/75, de 23 de Maio, prevê, no seu artigo II, a designação, por cada Parte Contratante, das pessoas habilitadas a tratar das matérias relativas ao testamento internacional no respectivo território.

> 2 — Considera-se no presente diploma que tal designação deverá recair sobre os notários e agentes consulares portugueses em serviço no estrangeiro,

de Silva, a notary in Portugal, is the signature of an authorized person in Portugal.[8] This authorized person's signature must be recognized by Nevada.

Accordingly, we conclude that the will was signed in the presence "of a person authorized to act in connection with international wills." NRS 133A.060(2). Thus, the district court did not err in finding that the will met all the requirements for a uniform international will, although we note the district court did not utilize the proper analysis to arrive at this conclusion.[9] *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) (holding that we will affirm the district

---

> já que, nos termos do Código do Notariado, o tratamento daquelas matérias se insere perfeitamente no âmbito da sua competência.

Google Translate translation of the text states,

> 1 — The Convention on the Uniform Law on the Form of an International Will, approved for accession by Decree-Law no. 252/75, of 23 May, provides, in its article II, for the designation, by each Contracting Party, of the persons authorized to deal with matters relating to the international will in their respective territory.

> 2 — It is considered in the present diploma that such designation should fall on Portuguese notaries and consular agents in service abroad should be appointed, since, under the terms of the Notary Code, the treatment of those matters falls perfectly within the scope of their competence.

[8]Hisgen does not provide, and we could not find, relevant Portuguese law stating that Santos is an authorized person because she is an attorney in Portugal.

[9]The district court did not look to see who qualified as an "authorized person" in Portugal, probably because the parties did not request it to do so.

court if it reaches the correct result, even if for the wrong reason). Next, we turn to whether the district court erred in alternatively ruling that the will could be probated under NRS Chapter 133.

*The district court did not err in alternatively ruling that the will could be admitted to probate under NRS Chapter 133*

Sweet argues that the district court erred in concluding that, even if Marilyn's will was not valid under NRS Chapter 133A, it could nevertheless be probated under NRS Chapter 133. She argues that NRS 133.040, relating to wills executed in Nevada, is inapplicable to Marilyn's will because the will was undisputedly executed outside of Nevada. Turning to NRS 133.080(1), foreign execution of wills,[10] Sweet argues that statute should be interpreted to apply to "wills made in other states or wills made in countries that have not adopted the [uniform] [i]nternational [w]ill [requirements]." She argues the district court instead interpreted NRS 133.080(1) to be "a savings clause for international wills that fail to meet the requirements of NRS [Chapter] 133A." This interpretation, according to Sweet, renders NRS 133.080(1)'s "[e]xcept as otherwise provided in chapter 133A" language superfluous.

Hisgen counters that NRS 133A.050(2) indicates that the UIWA was not intended to supplant NRS Chapter 133. He argues the will

---

[10]NRS 133.080(1) states,

> Except as otherwise provided in chapter 133A of NRS, if in writing and subscribed by the testator, a last will and testament executed outside this State in the manner prescribed by the law, either of the state where executed or of the testator's domicile, shall be deemed to be legally executed, and is of the same force and effect as if executed in the manner prescribed by the law of this State.

could be admitted to probate under NRS 133.080(1) because it was a valid will in Portugal, where it was executed. He further argues that NRS 133.080(1) allows the will to be probated because it was a valid will in Maryland, where Marilyn was domiciled when the will was executed.

"The construction of a statute is a question of law, which we review de novo." *Orion Portfolio Servs. 2, LLC v. County of Clark*, 126 Nev. 397, 402, 245 P.3d 527, 531 (2010). Where a statute is clear and unambiguous, we give "effect to the plain and ordinary meaning of the words" without resorting to the rules of statutory construction. *Id.* NRS Chapter 133A defines "international will" as "a will executed in conformity with NRS 133A.050 to 133A.080 inclusive." NRS 133A.040. However, failure to conform with those provisions "does not affect [the will's] formal validity as a will of another kind." NRS 133A.050(2). Nevada deems as legally valid a will executed outside the state, provided it complies with the law "where executed or of the testator's domicile." NRS 133.080(1).

NRS 133A.050(2) and NRS 133.080(1) are clear and unambiguous. NRS 133A.050(2) states that the invalidity of a will as an international will—defined as a will that complies with the UIWA—does not affect its validity as a will of another kind. NRS Chapter 133 provides for different types of wills, all of which can be probated in Nevada. *See, e.g.*, NRS 133.040 (requirements for wills executed in Nevada); NRS 133.080 (requirements for foreign wills); NRS 133.085 (requirements for electronic wills); NRS 133.090 (requirements for a holographic will). Reading the two statutes together, there is nothing preventing a will that fails to comply with the UIWA from being admitted to probate under one of the provisions in NRS Chapter 133.

COURT OF APPEALS
OF
NEVADA

(O) 1947B

This reading of the statute gives effect to the plain and ordinary meaning of the words in NRS 133A.050(2) and NRS 133.080. *See Orion Portfolio Servs.*, 126 Nev. at 402, 245 P.3d at 531. A plain reading of the statutes does not support Sweet's argument that NRS 133.080 cannot apply to wills executed in countries that have adopted the uniform international will requirements because no language within the statute supports that assertion. Additionally, our reading is supported by the legislative history of NRS Chapter 133A. At an assembly hearing on Senate Bill 141—which would become NRS Chapter 133A—Senator Terry Care testified that "Nevada will recognize a will validly executed in another state and probably would recognize in most instances a will executed in another country." *Hearing on S.B. 141 Before the Assemb. Comm. on Judiciary*, 75th Leg. Sess. 3 (Nev. 2009). According to Senator Care, a primary purpose of NRS Chapter 133A was to give a Nevadan with property in a foreign country the ability to sign a uniform will as to the disposition of that property "despite any variance with local requirements." *Id.* The legislative history also addresses the "except as otherwise provided in Chapter 133A of NRS" language from NRS 133.080. That language was added to NRS 133.080 "so if a will is executed in conformity with the requirements of an international will [but] may not meet the requirements of the place where it is made, it can still be a valid international will." *Hearing on S.B. 141 Before S. Comm. on Judiciary*, 75th Leg. Sess., at 13 (Nev. 2009) (statement of Natalee Binkholder, Deputy Legis. Counsel).

Here, NRS 133.080(1) provides for the will to be probated as a foreign will. Sweet does not dispute Hisgen's argument that the will was valid under Maryland law or that Marilyn was domiciled in Maryland at

the time the will was executed.[11]   Accordingly, the will could have been properly admitted to probate in Nevada as a will valid in Maryland under NRS 133.080(1).  Sweet also did not dispute below that Marilyn's will was legally valid in Portugal,[12] nor does she dispute that the will was executed in Portugal.  This provides a second ground upon which the will could have been properly admitted to probate under NRS 133.080(1)—as a valid Portuguese will.  In sum, a plain reading of NRS 133A.050(2) in conjunction with NRS 133.080(1) means that a will that fails to comply with the UIWA may nevertheless be probated in Nevada, even if it was executed internationally.

As noted above, the probate commissioner concluded in his R&R that the will could be probated under NRS 133.040 because it "facially" met that section's requirements.  And the district court affirmed the R&R in its entirety.  However, NRS 133.040 applies only to wills executed in Nevada.  The district court therefore erred in concluding that the will could be

_____

[11]We consider this lack of response to be a concession by Sweet that Hisgen is correct.  *See Ozawa v. Vision Airlines, Inc.*, 125 Nev. 556, 563, 216 P.3d 788, 793 (2009) (treating a party's failure to respond to an argument as a concession that the argument is meritorious); *Colton v. Murphy*, 71 Nev. 71, 72, 279 P.2d 1036, 1036 (1955) (concluding that when respondents' argument was not addressed in appellants' opening brief, and appellants declined to address the argument in a reply brief, "such lack of challenge . . . constitutes a clear concession by appellants that there is merit in respondents' position").

[12]On appeal, Sweet appears to challenge the validity of Marilyn's will under Portuguese law because the will left nothing for her children— something Sweet alleges is required in Portugal.  However, Sweet failed to raise this argument, or any other argument challenging the validity of the will under Portuguese law, during the proceedings below and has thereby waived it on appeal.  *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (explaining that issues not argued below are "deemed to have been waived and will not be considered on appeal").

admitted to probate under NRS 133.040. Nevertheless, we affirm the district court's order because, as explained above, the will could have been properly admitted to probate under NRS 133.080(1). *See Saavedra-Sandoval*, 126 Nev. at 599, 245 P.3d at 1202 (providing this court will affirm the district court if it reaches the correct result, even if for the wrong reason). Having concluded that the district court properly admitted Marilyn's will to probate, we now turn to whether the district court properly interpreted the will.

*The district court did not err in ruling that the will applied to the entire estate*

The record includes two slightly different translations of the will.[13] The Piotrowski translation, used by the district court, reads, "[Marilyn Weeks Sweet] establishes as universal heir of all her goods, rights, and actions in Portugal, Christopher William Hisgen . . . ." The Santos translation reads, "[Marilyn Weeks Sweet] [e]stablishes universal heir to all her assets, rights and shares in Portugal, Christopher William Hisgen . . . ." Sweet argues that the modifier "in Portugal" in the will applies to the entire preceding clause, not just "actions" in the Piotrowski translation or "rights and shares" in the Santos translation. She therefore argues that the will applied only to property situated in Portugal. Hisgen counters that wills must be interpreted in such a way as to avoid intestacy.

---

[13]The district court failed to certify a correct English translation of the will. *See* NRS 136.210 ("If the will is in a foreign language the court shall certify to a correct translation thereof into English and the certified translation shall be recorded in lieu of the original."). Neither party raises this as an issue on appeal, so we do not need to address it. *See Greenlaw* 554 U.S. at 243 ("[W]e rely on the parties to frame the issues for decisions and assign to courts the role of neutral arbiter of matters the parties present."). We note that the Piotrowski translation was attached to the will admitted to probate and was relied upon by the district court.

He argues that Sweet's interpretation of the will would effectively subject the entire estate to intestacy because the only known asset is situated in Nevada.

Where ambiguity exists in a will, we turn to rules of construction in construing the testatrix's intent. *Lamphear v. Alch*, 277 P.2d 299, 302 (N.M. 1954).[14] "A will is ambiguous if the testator's intent is unclear because words in the will can be given more than one meaning or are in conflict." *In re Estate of Lello*, 50 N.E.3d 110, 113 (Ill. App. Ct. 2016) (quoting *Coussee v. Estate of Efston*, 633 N.E.2d 815, 818 (Ill. App. Ct. 1994)).[15] Here, the modifier "in Portugal" could be read to apply either to

---

[14]*See also In re Estate of Lello*, 50 N.E.3d 110, 120 (Ill. App. Ct. 2016) ("As a rule of construction . . . the presumption against intestacy only comes into play after an ambiguity is found." (quoting *Coussee v. Estate of Efston*, 633 N.E.2d 815, 818 (Ill. App. Ct. 1994)); *Thurmond v. Thurmond*, 228 S.W. 29, 32 (Ky. 1921) ("[The presumption against partial intestacy] can be invoked only to aid the interpretation of a will where the intention of the testator is conveyed in uncertain and ambiguous terms . . . ."); *In re Estate of Holbrook*, 166 A.3d 595, 598 (Vt. 2017) ("[W]here both the will and the surrounding circumstances are ambiguous . . . the presumption against intestacy . . . requires that the court construe the will as absolute." (internal quotation marks omitted)); *In re Estate of Hillman*, 363 N.W.2d 588, 590 (Wis. Ct. App. 1985) ("The presumption against intestacy does not apply to the construction of this will because the will is not ambiguous.").

[15]*See also In re Estate of Zagar*, 491 N.W.2d 915, 916 (Minn. Ct. App. 1992) ("A will is ambiguous if, on its face, it suggests more than one interpretation."); *In re Estate of Grengs*, 864 N.W.2d 424, 430 (N.D. 2015) ("A will is ambiguous if, after giving effect to each word and phrase, its language is susceptible to more than one reasonable interpretation." (quoting *In re Estate of Eggl*, 783 N.W.2d 36, 40 (N.D. 2010))); *Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018) ("A will is ambiguous when it is subject to more than one reasonable interpretation or its meaning is simply uncertain.") (per curiam); *In re Estate of Stanton*, 114 P.3d 1246, 1249 (Wy. 2005) ("A will is ambiguous if it is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.").

the entire clause preceding it or to only the words immediately preceding it. Because the words of the will can be given more than one meaning, Marilyn's intent is unclear and the will is therefore ambiguous. *See id.* Accordingly, we turn to rules of construction to interpret Marilyn's will to reflect her intent.

"[T]he interpretation of a will is typically subject to our plenary review." *In re Estate of Melton*, 128 Nev. 34, 43, 272 P.3d 668, 673 (2012). "The primary presumption when interpreting or construing a will is that against total or partial intestacy." *In re Foster's Estate*, 82 Nev. 97, 100, 411 P.2d 482, 483 (1966).[16] This presumption against intestacy is particularly strong where a will contains a residuary clause. *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980) ("Where the will contains a residuary clause, the presumption against intestacy is especially strong.").[17] The guideline for interpreting a will is the intention

---

[16]*See also Tsirikos v. Hatton*, 61 Nev. 78, 84, 116 P.2d 189, 192 (1941) ("[W]here the language employed in a will reasonably admits of a construction favorable to testacy, such construction should obtain."); *In re Farelly's Estate*, 4 P.2d 948, 951 (Cal. 1931) ("Of two modes of interpreting a will, that is preferred which will prevent a total intestacy. The same rule has been applied to partial intestacy." (internal quotation marks omitted)).

[17]*See also Cahill v. Michael*, 45 N.E.2d 657, 662 (Ill. 1942) ("The presumption against intestacy is strong where there is a residuary clause."); *Medcalf v. Whitely's Adm'x*, 160 S.W.2d 348, 349 (Ky. 1942) ("[T]he presumption against intestacy . . . is particularly strong where the residuary is disposed of . . . ."); *In re Glavkee's Estate*, 34 N.W.2d 300, 307 (N.D. 1948) ("The presumption against an intestacy is especially strong where the testator has attempted to insert a general residuary clause in the will."); *Edwards v. Martin*, 169 A. 751, 752 (R.I. 1934) ("There is also the presumption against intestacy, here particularly strong since the residuary clause is the subject of consideration.").

of the testatrix, determined by the meaning of her words. *In re Foster's Estate*, 82 Nev. at 100, 411 P.2d at 484.

Here, the district court did not err in interpreting the will to apply to the entire estate. First, Marilyn designated Hisgen as "universal heir of all her goods, rights, and actions in Portugal." Universal succession under Roman or civil law referred to the totality of one's estate. *See Succession, Black's Law Dictionary* (11th ed. 2019) (defining "universal succession" as "[s]uccession to an entire estate of another at death"); George A. Pelletier Jr. & Michael Roy Sonnenreich, *A Comparative Analysis of Civil Law Succession*, 11 Vill. L. Rev. 323, 324-26 (1966) (tracing the concept of universal succession—meaning "succession by an individual to the entirety of the estate, which includes all the rights and duties of the decedent"— back to its roots in Roman law). Accordingly, Marilyn's use of the term "universal heir" indicates her intent that Hisgen inherit her entire estate. While this is contradicted by the modifier "in Portugal," the presumption against intestacy overrides the modifier and ensures that Hisgen inherits her entire estate. This means that the modifier only applies to "actions" or "rights and shares." *See Tsirikos v. Hatton*, 61 Nev. 78, 84, 116 P.2d 189, 192 (1941) (concluding where the language in a will reasonably allows a construction favorable to testacy, that construction should be used). Thus, we give effect to both "universal heir" and "in Portugal" and use the meaning of the words utilized by Sweet to determine her intent. *See In re Foster's Estate*, 82 Nev. at 100, 411 P.2d at 484.

Second, the modifier "in Portugal" is not included in the residuary clause, which instead simply states that Marilyn's daughters "[would] be her heirs" should Hisgen have predeceased her. As noted above, the inclusion of a general residuary clause strengthens the presumption against intestacy. Therefore, interpreting the will to apply to the entire

estate gives meaning to the use of the words "universal heir" and the omission of any modifier in the residuary clause. *See In re Foster's Estate*, 82 Nev. at 100, 411 P.2d at 484. This interpretation is also consistent with the presumption against intestacy, *see id.* at 100, 411 P.2d at 483, which in this case—because the only asset in the estate is located in Nevada—would result in total intestacy. Accordingly, the district court did not err in ruling that the will devised property outside of Portugal because the language of the will indicates that Marilyn intended to devise her entire estate and there is a strong presumption against intestacy.

*Sweet was not entitled to a will contest*

Finally, Sweet argues the district court erred by not holding a will contest as to the validity of the will. She argues the mandatory language of NRS 137.020(2)[18] required a will contest. Hisgen counters that Sweet never requested a will contest during the proceedings below and has therefore waived this argument on appeal. He further argues that NRS 137.010(1) required Sweet to issue citations (notices) before either the probate commissioner or the district court could have ordered a will contest. Her failure to do so, according to Hisgen, deprived the district court of jurisdiction to hold a will contest.

---

[18]NRS 137.020(2) states as follows:

> An issue of fact involving the competency of the decedent to make a will, the freedom of the decedent at the time of the execution of the will from duress, menace, fraud or undue influence, the due execution and attestation of the will, or any other question substantially affecting the validity of the will, must be tried by the court unless one of the parties demands a jury.

Here, Sweet was not entitled to a will contest during the proceedings below. As a preliminary matter, Sweet did not argue below that she was entitled to a will contest despite possibly initiating the process by filing her written objection prior to the hearing on Hisgen's petition to probate the will. *See* NRS 137.010(1) (stating who may contest a will and how to initiate the process). Therefore, this argument could be considered waived on appeal. *See Old Aztec Mine*, 97 Nev. at 52, 623 P.2d at 983. Regardless, she concedes that she did not "technically compl[y]" with NRS 137.010(1), which requires, in addition to filing a written objection, personal notice of a will contest to be given by citation to a decedent's heirs and all interested persons. "[F]ailing to issue citations in a will contest deprives the [district] court of personal jurisdiction over the parties denied process." *In re Estate of Black*, 132 Nev. 73, 78, 367 P.3d 416, 419 (2016).[19] Accordingly, here, Sweet's failure to issue any citation for a will contest deprived the district court of jurisdiction over such a contest, and the district court therefore did not err in not holding a will contest.

## CONCLUSION

The international scope of the UIWA requires the court to look to the laws of the foreign state where the will was executed to determine the proper identity of an "authorized person." Further, NRS 133A.050(2) and NRS 133.080(1) are clear and unambiguous in allowing a will that fails

---

[19]We note that this requirement is analogous to the demand requirement found in NRS 13.050(1)(a) (providing even if venue is not proper, the proceeding may be held in the improper county unless the defendant demands in writing that the trial be held in the proper county). A motion is not a substitute for a demand. *See New Transit Co. v. Harris Bros. Lumber Co.*, 80 Nev. 465, 468-69, 398 P.2d 133, 134 (1964) (explaining that a motion for a change of venue does not meet the requirement that a written demand for a change of venue be filed).

to comply with the UIWA to be probated in Nevada, even if it was executed in a foreign country, so long as it complies with NRS Chapter 133. Also, the district court did not err in applying the will to the entire estate. Finally, Sweet was not entitled to a will contest during the proceedings below because she did not comply with NRS 137.010(1). Accordingly, we affirm the district court's order.

_____, C.J.
Gibbons

We concur:

_____, J.
Tao

_____, J.
Bulla